# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISCTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| IN RE:    JAMES F. PRICE,<br><br>                        Debtor. | Case No. 08-32570-KRH<br>Chapter 7 |
| RBA CAPITAL, LP,<br><br>                        Plaintiff,<br><br>v.<br><br>JAMES F. PRICE,<br><br>                        Defendant. | APN 08-03115-KRH |

## MEMORANDUM OPINION

This matter comes before the Court on the Motion of RBA Capital, LP ("RBA," or the "Plaintiff") to Compel and for Sanctions against Defendant James F. Price ("Price," or the "Defendant") arising out of the Defendant's failure to attend his scheduled deposition (the "Motion"). The Court granted the Plaintiff's motion to expedite hearing on the Motion. The Defendant failed to file a response or appear at the expedited hearing held on February 25, 2009 (the "Hearing").[1] Defendant's counsel, Robert Canfield ("Mr. Canfield"), did appear at the Hearing. Mr. Canfield advised the Court that he had filed a Motion to Withdraw as Counsel and that his client, the Defendant, had informed him that he did not intend to appear at the Hearing and was aware of the consequences of his failure to appear.

---

[1] The Court subsequently authorized Mr. Canfield's withdrawal as Defendant's counsel by order entered on March 9, 2009.

On January 28, 2009, RBA properly noticed the deposition of Price for 9:00 a.m. on February 20, 2009, in the Richmond offices of counsel for RBA. In subsequent communications with counsel for RBA, Mr. Canfield agreed to the date, time, and place of the deposition and confirmed that the deposition would take place. Mr. Canfield showed up for the deposition, but Price failed to do so. Price also failed to provide any prior notice of or explanation for his failure to attend the deposition. Price's actions show bad faith and willfulness because Price's failure to attend his deposition was without notice, explanation, or excuse. Price's failure to attend his deposition caused prejudice to RBA and its ability to prepare for trial, particularly since Price's action occurred less than three weeks before trial.

At the conclusion of the Hearing, the Court found Defendant in contempt for his failure to appear at his scheduled deposition and further found that Default Judgment against Defendant was an appropriate sanction pursuant to Rule 7037 of the Federal Rules of Bankruptcy Procedure. Out of an abundance of caution the Court required the Plaintiff to re-notice the Hearing to provide the Defendant with unambiguous and conspicuous notice that the Plaintiff sought Default Judgment as the sanction against the Defendant. This notice was filed on March 16, 2009, and a second hearing was held on March 31, 2009. The Defendant again failed to appear or contest the Motion. The Court therefore entered an Order Granting Sanctions and Default Judgment on April 2, 2009. This Memorandum Opinion sets forth the Court's findings of fact and conclusions of law in support of the Default Judgment pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.[2]

---

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

**FINDINGS OF FACT**

Plaintiff RBA Capital, LP, is a limited partnership formed under the laws of the Commonwealth of Pennsylvania. Defendant James Price, an individual, is a resident and domiciliary of the Commonwealth of Virginia. Price was the President and CEO of a corporation operating in Midlothian, Virginia, under the name Leader Funding, Inc. ("LFI"). LFI was engaged in the business of originating commercial real estate loans for the construction of non-owner occupied one (1) to four (4) family residential real properties. LFI wholly owned and controlled a special purpose entity, Leader Funding's LLC, a Virginia limited liability company ("Leader"). Leader provided interim financing for the loans originated by LFI.

RBA provided a $3 million rediscount revolving line of credit to Leader pursuant to a Loan and Security Agreement dated May 11, 2007 (the "LOC Agreement"). The purpose of the line of credit was to provide a facility for the funding of loans originated by LFI until the loans were refinanced or sold on the secondary market. Leader's obligations to RBA are secured by certain collateral, including, but not limited to, the mortgages and notes executed by the borrowers at loan closings, together with assignments of the executed mortgages. LFI guaranteed and became surety to RBA for all sums advanced pursuant to the LOC Agreement. Price guaranteed and became surety to RBA for all sums advanced pursuant to the LOC Agreement.

In March 2008, RBA extended financing on the following construction loans originated by LFI and related to properties in Princeton, North Carolina (the "Princeton Properties"):

| _Borrower_ | _Subdivision_ | _City, State_ | _Lots_ |
|---|---|---|---|
| a. Efrain Berrios | Carolyn Ridge | Princeton, NC | Lots 43,44,54-57 |
| b. Liliana Deiac | Carolyn Ridge | Princeton, NC | Lots 29,30,34,46-48 |

  c. Kappa Farrid  Carolyn Ridge  Princeton, NC Lots 12,13,15-17,36

In an effort to induce RBA to extend additional financing, Price represented to RBA that he had secured permanent take-out financing for those loans.

  Pursuant to this representation, Price obtained a set of letters from Mortgage Design Group, Inc. purporting to provide mortgage loan approvals (the "Approval Letters") for the Princeton Properties.  On March 17, 2008, Kristi Durham of Mortgage Design Group, Inc. informed Price by e-mail that the Approval Letters were no longer valid.  Thereafter, Price presented the Approval Letters to RBA and falsely represented that they were still valid.

  In March 2008, RBA extended financing on the following additional construction loans originated by LFI on certain properties located in Longs, South Carolina, and La Grange, North Carolina (the "Carolinas Properties"):

| _Borrower_ | _Subdivision_ | _City, State_ | _Lots_ |
|---|---|---|---|
| d. Harold Van Prooyan | Myrtle Grove Plantation | Longs, SC | Lots 1-6 |
| e. Joan Van Prooyan | Myrtle Grove Plantation | Longs, SC | Lots 7,8,60-63 |
| f. Adel Saleh | Hadley Acres | La Grange, NC | Lots 6,8,16,18,29,30 |
| g. Sam Woolard | Willow Pond | La Grange, NC | Lots 3,4,15,22,29,30 |

On March 21, 2008, in an effort to induce RBA to fund draws on the construction loans, Price represented to RBA that he had secured permanent take-out financing for the above-referenced loans on the Carolinas Properties.

  On March 21, 2008, Price presented to RBA a set of loan commitment letters from Monarch Financial Services (the "Commitment Letters").  On March 26, 2008, Jeff Weatherspoon of Monarch Financial Services informed RBA that the Commitment Letters were counterfeit and had not been produced by Monarch Financial Services.  The LOC Agreement

4

provided that any misrepresentation by Leader or any surety would constitute an event of default. Once RBA learned of the false representations made to it by Price on behalf of LFI and Leader, RBA declared an event of default under the LOC Agreement.

Under the LOC Agreement, Leader was obligated to (i) hold all escrow funds collected in respect of a pledged mortgage loan in trust without commingling the same with non-custodial funds; and (ii) apply the escrow funds for the purposes for which such funds were collected. Further, the LOC Agreement obligated Leader to remit to RBA all sales proceeds, refinancing proceeds or any other income collected from any source in connection with the pledged mortgage loans within four (4) days (collectively, "Pledged Funds").

Price withheld, wrongfully diverted, or caused LFI and/or Leader to withhold or wrongfully divert Pledged Funds that were obligated to be remitted to RBA. The withholding or diversion of the Pledged Funds was done without the knowledge and without the consent of RBA.

Kappa Farid held real property specifically identified as Lot 36 in the Carolyn Ridge Subdivision in Princeton, North Carolina (the "Farid Property"). The Farid Property was encumbered by a mortgage assigned to RBA. On April 1, 2008, the Farid Property was sold. Price provided the title company with inaccurate payoff letters in connection with the closing on the Farid Property. Price also provided the title company with instructions to wire or send the loan payoff proceeds directly to LFI, rather than the separate account pledged to RBA, in violation of the LOC Agreement. Price, LFI, and Leader failed to remit the loan payoff proceeds from the Farid Property to RBA, in violation of the LOC Agreement.

Efrain Berrios held real property specifically identified as Lot 55 in the Carolyn Ridge Subdivision in Princeton, North Carolina (the "Berrios Property"). The Berrios Property was

5

encumbered by a mortgage assigned to RBA. On April 8, 2008, the Berrios Property was sold. Price provided the title company with inaccurate payoff letters in connection with the closing on the Berrios Property. Price also provided the title company with instructions to wire or send the loan payoff proceeds directly to LFI, rather than the separate account pledged to RBA, in violation of the LOC Agreement. Price, LFI, and Leader failed to remit the loan payoff proceeds from the Berrios Property to RBA, in violation of the LOC Agreement.

RBA reasonably relied upon the representations of Price, Leader and LFI that Leader would hold Pledged Funds in trust for, and would promptly remit Pledged Funds to, RBA. The representations made by Price, Leader and LFI were materially false because Price, Leader or LFI received Pledged Funds but failed to remit those sums to RBA. The above misrepresentations and failure to pay RBA are the proximate causes of RBA's damages in the amounts indicated below.

Price is indebted to RBA in the principal amount of $2,587,194.33 (after deductions for recoveries made by RBA), plus interest through March 31, 2009 in the amount of $52,932.82, plus attorneys' fees of $264,012.72, which is equal to ten percent (10%) of the amount of judgment granted herein, as provided under the LOC Agreement, for a total indebtedness of $2,904,139.87. In addition, interest on the principal amount of Price's indebtedness shall continue to accrue at the rate of prime plus seven percent (7%) per annum, the same presently being $736.64 per day, from March 31, 2009, until the indebtedness is paid in full.

## CONCLUSIONS OF LAW

This adversary proceeding relates to the Chapter 7 case of James F. Price, Case No. 08-32570, pending in the United States Bankruptcy Court for the Eastern District of Virginia. This Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. §§ 1334 and 157.

Venue of this adversary proceeding is proper in the Eastern District of Virginia pursuant to 28 U.S.C. § 1409(a). This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). This Court has personal jurisdiction over Price pursuant to Federal Rule of Bankruptcy Procedure 7004(f).

A party's failure to attend his own deposition is grounds for sanctions. *See* Fed. R. Civ. P. 37(d)(1)(A)(i); Fed. R. Bankr. P. 7037. The Court must consider four factors prior to imposing default judgment as a sanction for discovery abuse: (1) whether the noncomplying party acted in bad faith, (2) the extent of prejudice to the noncomplying party's adversary, (3) the need for deterrence, and (4) the effectiveness of less drastic sanctions. *See Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989) (citing *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 503–06 (4th Cir. 1977)); *see also Am. Gen. Fin., Inc. v. Goad* (*In re Goad*), Case No. 96-3223, 1997 WL 33807883 (Bankr. E.D. Va. July 15, 1997).

Price's actions show bad faith and willfulness because Price's failure to attend his deposition was without notice, explanation, or excuse. *See, e.g.*, *Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003) ("Disobedient conduct not shown to be outside the control of the litigant is sufficient to demonstrate willfulness, bad faith, or fault.") (quoting *Hyde & Drath v. Baker*, 24 F.3d 1162, 1166 (9th Cir. 1994)). Price's failure to attend his deposition caused prejudice to RBA and its ability to prepare for trial, particularly since Price's action occurred three weeks before trial. *See* Pre-Trial Order dated October 8, 2008 (setting trial for March 16–17, 2009). There is a strong need to deter the kind of severe discovery violation committed by Price here.

Less drastic sanctions would not be effective. The most common type of sanction—a monetary award—is inappropriate because Price is in bankruptcy and could not pay. *See Sloane*

*v. Thompson*, 128 F.R.D. 13, 16 (D. Mass. 1989) ("[T]he court concludes that there is no sanction short of dismissal which would now be truly appropriate in the circumstances of this case. . . . [The defaulting party], it has been represented, does not have the means to pay monetary sanctions, and there is not justification for ordering counsel to do so.  More importantly, such sanctions would not furnish [movants] with the information necessary to address [the defaulting party's] claims for damages at trial."). Price's discovery violation does not relate to any particular contention or piece of evidence, so a sanction regarding specific facts or evidence is inapt. Any less severe sanction would also require delaying the trial date, to the further detriment of RBA and the Court. *See, e.g.*, *Webb v. D.C.*, 146 F.3d 964, 971 (D.C. Cir. 1998) (reversing entry of a default judgment because the district court failed to explain why it did not impose a lesser sanction, but noting that one of the "three basic justifications that support the use of dismissal or default judgment as a sanction for misconduct" is that "the court may take account of the prejudice caused to the judicial system when the party's misconduct has put 'an intolerable burden on a district court by requiring the court to modify its own docket and operations in order to accommodate the delay'") (quoting *Shea v. Donohoe Constr. Co.*, 795 F.2d 1071, 1075 (D.C. Cir. 1986)).

Accordingly, under the circumstances, the Court concludes that striking Price's Answer and granting default judgment in favor of RBA is the most appropriate sanction for Price's misconduct.  *E.g.*, *Jorgensen*, 320 F.3d at 912 (affirming a decision to strike answers as a sanction for the failure to produce requested documents, and rejecting defendant's explanation that the documents "were in the possession of a Philippines guardianship court and could not be released without its approval" because defendants had not shown any attempt to obtain the documents from that court or that production would be impossible); *United States v. De Frantz*,

8

708 F.2d 310, 311–12 (7th Cir. 1983) (affirming entry of "a default judgment for $187,000 in favor of the plaintiffs because the defendant, DeFrantz, had failed to appear for his deposition," and rejecting defendant's claims of serious health impairments that prevented him from flying to the deposition because there was "grave doubt" that the health claims were in good faith).

Price, LFI, and Leader represented that they would hold Pledged Funds in trust for RBA and would promptly remit Pledged Funds to RBA.  Price knew these representations to be false at the time and made them with the intent and purpose of deceiving RBA.  RBA reasonably relied on the false representations because their falsity was not and could not have been readily apparent.  As a result of RBA's reliance on the representations made by Price, RBA has been damaged.

The Pledged Funds derived or obtained by Leader, LFI and Price under the LOC Agreement and related documents were in the possession and control of Price.  Price was at all times in control of LFI and Leader.  Based upon the facts as described above, the Court concludes that:

(A) Price obtained money from RBA by false pretenses, false representations and/or actual fraud, thus rendering his debt to RBA not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A);

(B) Price obtained money from RBA through embezzlement or defalcation while acting in a fiduciary capacity, thus rendering his debt to RBA not dischargeable pursuant to 11 U.S.C. § 523(a)(4); and

(C) Price caused willful and malicious injury to RBA, thus rendering his debt to RBA not dischargeable pursuant to 11 U.S.C. § 523(a)(6).

9

**CONCLUSION**

Accordingly, for the reasons set forth above, the Court will ORDER as follows:

(1) Final Judgment will be entered in favor of RBA and against Price on each of the claims set forth in the Complaint in the total amount of $2,904,139.87, plus interest at the rate of prime plus seven percent (7%) per annum, the same presently being $736.64 per day, from March 31, 2009, until the indebtedness is paid in full.

(2) This Final Judgment against Price will not be dischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(2)(A), § 523(a)(4) and § 523(a)(6).

A separate ORDER has issued.

DATED: _____

/s/ Kevin R. Huennekens
UNITED STATES BANKRUPTCY JUDGE

Copies to:

Jonathan L. Hauser, Esq.
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA  23462

Robert A. Angle, Esq.
Andrea M. Sullivan, Esq.
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, VA  23219

James Frederick Price
P.O. Box 816
Midlothian, VA  23113